UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

-------------------------------------------------------X

| | |
|---|---|
| TRS RECOVERY SERVICES, INC., and TELECHECK SERVICES, INC., Fair Debt Collections Practices Act (FDCPA) Litigation | MDL No. 2426 <br><br> Civ. Action No. 2:13-md-2426-DBH |

-------------------------------------------------------X

| | |
|---|---|
| This document relates to: | CLASS ACTION |
| MELISSA ALLEN v. TRS RECOVERY SERVICES, INC., and TELECHECK SERVICES, INC. | JURY TRIAL DEMANDED |

-------------------------------------------------------X

**COMPLAINT IN INTERVENTION – CLASS ACTION**

### I.  Preliminary Statement

1. Plaintiff Melissa Allen, on her own behalf and on behalf of all others similarly situated (collectively Plaintiffs), by her undersigned counsel, and upon the granting of her Oral Motion For Leave to File Complaint in Intervention on May 7 2013, hereby brings this action against Defendants.

2. This is a consumer class action brought on behalf of consumers subjected to Defendants' widespread violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692- 1692p, the Maine Fair Debt Collections Practices Act ("MFDCPA"), 32 M.R.S.A. §§ 11001-11054, and the Maine Unfair Trade Practices Act ("MUTPA"), 5 M.R.S.A. §§ 205A-214.

3. Ms. Allen fits within the definition of each of the classes described in the Class

Action Complaint of Jean LaRocque ("LaRocque Complaint") filed by Plaintiff Jean LaRocque on March 11, 2011, Civil No. 2:11-cv-91-DBH.

## II.     Jurisdiction and Venue

4.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k and 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

5.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.     Parties

6.     Plaintiff Melissa Allen is an adult individual who resides at 23 Ocean View Road, Scarborough, Maine 04074.

7.     Defendant TRS Recovery Services, Inc. ("TRS") is a business entity regularly engaged in the business of collecting debts in this District with its principal place of business at 5251 Westheimer Road, Houston, Texas 77056.

8.     Defendant TeleCheck Services, Inc. ("TeleCheck") is a business entity regularly engaged in the business of providing check advisory; check processing; risk-analysis; and debt collection services in this District with its principal place of business at 5251 Westheimer Road, Houston, Texas 77056.

9.     The principal purpose of Defendants is the collection of consumer debts using the mails and telephone, and Defendants regularly attempt to collect alleged debts originally due to another.

## IV.     Factual Allegations

10. Defendants work in concert with each other in connection with the collection of alleged debts originally due to another and correspond with consumers, including Plaintiff, with letterhead that, on occasion, identifies the sender of the correspondence as both TeleCheck and TRS in the same communication.

11. Moreover, TeleCheck uses its custom TeleCheck-marked envelopes and return address to mail dunning letters and other correspondence for TRS.

12. Telecheck contracts with several national merchants such as Origins to process checks.

13. When a consumer presents a check for payment at a merchant location, the check is scanned through a cash register and data about that check-writer is electronically communicated by the merchant to Telecheck.

14. Telecheck then advises the merchant whether to accept or reject the check.

15. On or around December 2010, Ms. Allen made a purchase at the Origins store in the Maine Mall in South Portland, Maine.

16. Ms. Allen paid for the purchase with a check drawn from her Saco & Biddeford Savings (hereafter "bank") account.

17. Based on information and belief, Origins contracts with Defendant TeleCheck for its services and Ms Allen's check was scanned and transmitted to TeleCheck to perform check processing and analysis.

18. Even though Ms. Allen had sufficient funds in her bank account to cover the

amount of the check and to satisfy obligations to Origins for her purchase at the Maine Mall store, Telecheck erroneously concluded that her check had bounced.

19.     Defendants had no contract with Ms. Allen, TRS had not been identified to her, and TRS has never had any legal authority to create any draft in her name.

20.     Nevertheless, after the Origins transaction, Defendants sent Ms. Allen a standardized letter that Defendants call a "RECR3" letter, explaining that Defendants were resubmitting the check to her bank in order to debit her account for a bounced check.

21.     On information and belief, the RECR3 dunning letter advised Ms. Allen that Telecheck had "purchased" the Origins check and alleged debt and "turned that debt over" to its "affiliate" TRS for collection.

22.     On information and belief, the RECR3 dunning letter further advised Ms. Allen that TRS Recovery Services will create a paper draft and submit it to her bank in order to help itself to "the outstanding amount" including a "returned check fee" to which they were not lawfully entitled

23.     Concerned that she would suffer unwarranted debits from her bank account, Ms. Allen placed phone calls to Defendants until she eventually spoke to an employee. After some discussion and waiting on hold, Ms. Allen was eventually told that she should no longer receive dunning letters.

24.     After her conversations with Defendants, Ms. Allen continued to receive dunning letters from Defendants.

25.     On information and belief, the RECR3 dunning letter Ms. Allen received was a form dunning letter.

26. At no time did Ms. Allen give her permission to Defendants to employ self-help to debit her bank account. Further, Defendants failed to provide Ms. Allen with a 10-day advance notice or right to cure warning prior to the initiation of a collection action against her.

27. Defendants' actions as described above are consistent with their standard policies and practices for collecting alleged consumer "debts" associated with allegedly bounced checks, and for helping themselves to additional unauthorized and unlawful "fees."

28. Defendants have received numerous disputes concerning the above-described and unlawful practices, but have failed to take corrective action.

29. At all times pertinent hereto, Defendants were acting in concert with each other and by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

30. The acts alleged against the Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses.

31. Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

## V. Class Allegations

32. Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

(a) With respect to the MUTPA: All natural persons in the State of Maine from

whom one or both Defendants have taken a returned check fee beginning six years prior to the filing of the initial Class Action Complaint and up through the date of judgment.

(b) With respect to the FDCPA: All natural persons in the United States from whom one or both Defendants have taken a returned check fee by way of draft beginning one year prior to the filing of the initial Class Action Complaint and up through the date of judgment.

(c) With respect to the FDCPA and MFDCPA: All natural persons in the State of Maine to whom one or both Defendants sent a form letter with a Returned Check Fee Due section, beginning one year prior to the filing of the initial Class Action Complaint and up through the date of judgment.

(d) With respect to the FDCPA and MFDCPA: All natural persons in the State of Maine to whom one or both Defendants sent an initial form communication beginning one year prior to the filing of the initial Class Action Complaint and up through the date of judgment.

(e) With respect to the FDCPA and MFDCPA: All natural persons in the State of Maine to whom one or both Defendants sent an initial form communication and from whom one or both Defendants collected funds in any amount within 30 days of the letter by resubmitting to such person's bank or financial institution any allegedly dishonored check, beginning one year prior to the filing of the initial Class Action Complaint and up through the date of judgment.

33. The Classes are so numerous that joinder of all members is impracticable. Although

the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that Defendants handle tens of thousands of consumer check authorizations and returned check fee assessments every year. Accordingly, Plaintiff estimates that the class size numbers in the thousands.

34. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal question is whether the Defendants violated the FDCPA, the MFDCPA, and the MUTPA.

35. Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

36. Ms. Allen ("Representative Plaintiff") will fairly and adequately protect the interests of the Classes. Representative Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Representative Plaintiff nor her counsel has any conflicts with the class or interests which might cause them not to vigorously pursue this claim.

37. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

38. Whether Defendants RECR3 form letter was an unlawful FDCPA communication

can be easily determined.

39.     A class action is a superior method for the fair and efficiency adjudication of this controversy.  The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because the unlawful charges are relatively small and the maximum statutory damages are limited to $1,000.00 under the FDCPA and MFDCPA. Management of the Classes' claims is likely to present fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI.    Claims

### Count One - FDCPA

40.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

41.     Defendants are "debt collectors" as defined by section 1692a(6) of the FDCPA.

42.     Plaintiff is a "consumer" as defined by section 1692a(3) of the FDCPA.

43.     Defendants violated the FDCPA. Defendants' violations include violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f(1), 1692f(6)(A) and 1692g as evidenced by the following conduct:

(a) Falsely representing the amount, character or legal status of the debt;

(b) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false;

(c) Collection of an amount from the consumer that is not authorized by agreement or permitted by law;

(d) Taking or threatening to take non-judicial action to take property from the consumer which is not subject to a security interest;

(e) Failing to validate a disputed debt; and

(f) Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the consumer.

44. Defendants' acts as described above were done with intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

45. As a result of the above violations of the FDCPA, Defendants are liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

### Count Two - Violations of the Maine Fair Debt Collection Practices Act

46. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

47. Defendants are "debt collectors" as defined by section 11002(6) of the MFDCPA.

48. Plaintiff is a "consumer" as defined by section 11002(3) of the MFDCPA. The above contacts with Plaintiff by Defendants are "communications" relating to a "debt" as defined by sections 11002(1) and 11002(5) of the MFDCPA.

49. Defendants violated the MFDCPA. Defendants' violations include, but are not limited to, violations of 32 M.R.S.A. §§ 11013(2), 11013(2)(B)(1), 11013(2)(D), 11013(2)(E), 11013(2)(H), 11013(2)(J), 11013(3)(A), 11013(3)(F)(1) and 11014(2) as evidenced by the following conduct:

    (a) Using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the consumer;

    (b) Falsely representing the amount, character or legal status of the debt;

    (c) Falsely representing that nonpayment of any debt will result in the seizure or attachment of any property when such an action would be unlawful;

    (d) Falsely threatening to take an action that may not be legally taken;

    (e) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false;

    (f) Unfairly and unconscionably collecting fees not authorized under agreement or law;

    (g) Taking or threatening to take non-judicial action to take property from the consumer which is not subject to a security interest;

    (h) Failing to validate a disputed debt; and

    (i) Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from a consumer.

50. Defendants' acts as described above were done intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

51. As a result of the above violations of the MFDCPA, Defendants are liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

### **Count Three - Violations of the Maine Unfair Trade Practices Act**

52. Plaintiff incorporates the foregoing paragraphs as though the same were set forth

at length herein.

53. Any alleged debts at issue arose out of a transaction which was primarily for personal, family or household purposes.

54. Defendants engaged in "trade" and "commerce" as defined by section 206(3) of the MUTPA.

55. Plaintiff is a "person" as defined by section 206(2) of the MUTPA. Defendants violated the section 207(2) of the MUTPA by engaging in the following unfair and deceptive acts or practices:

    (a) Falsely imposing unauthorized fees in reaction to allegedly bounced checks;

    (b) Creating unauthorized electronic drafts in order to collect unauthorized funds;

    (c) Falsely threatening to take and in fact taking an action that may not be legally taken;

    (d) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false; and

    (e) Unfairly and unconscionably collecting fees not authorized under agreement or law.

56. Defendants' acts as alleged constitute unfair or deceptive acts or practices in the conduct of any trade or commerce and multiple, separate violations of Maine's Unfair Trade Practices Act.

57. Defendants' acts as described above are material misrepresentations advanced to mislead Plaintiff in a manner that Plaintiff could not reasonably avoid reliance on such misrepresentations, leading to Plaintiff's loss of money or real or personal property.

58. As a result of the above violations of the MUTPA, Plaintiff has suffered substantial injury entitling Plaintiff to an award of: injunctive relief; affirmative changes to the

Defendants' practices and procedures; equitable relief; restitution; money damages and attorney's fees and costs.

WHEREFORE, Plaintiff claims actual and statutory damages and all other forms of cognizable damages against Defendants and judgment in her favor, plus lawful interest thereon.

## VII.     Jury Trial Demand

59.     Plaintiff demands trial by jury on all issues so triable.

## VIII.     Prayer For Relief

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

(a) That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Classes;

(b)     That an order be entered declaring that Defendants' actions as described above are in violation of the FDCPA, MFDCPA, and MUTPA;

(c) That an order be entered directing Defendants to dispense with their unlawful and non-contractual fees for allegedly bounced checks;

(d) That an order be entered enjoining Defendants under the MUTPA from collecting unlawful and non-contractual fees for allegedly bounced checks;

(e) That all such unlawfully collected fees be disgorged by Court order;

(f) That judgment be entered against Defendants for statutory damages under the FDCPA and MFDCPA;

(g) That judgment be entered against Defendants for actual, compensatory and/or restitution damages;

    (h) That the Court award costs and reasonable attorney's fees under the FDCPA, MFDCPA and/or MUTPA; and

    (i) That the Court grant such other and further relief as may be just and proper.

                              Respectfully submitted,
                              LEWIS SAUL & ASSOCIATES, P.C.

Date:  May 10, 2013                */s/ Jon Hinck*
                                        Lewis J. Saul
                                        Jon Hinck (Maine Bar No. 8300)
                                        Kevin M. Fitzgerald (Maine Bar No. 9373)
                                        183 Middle Street, Suite 200
                                        Portland, ME  04101
                                        Phone: (207) 874-7407
                                        Facsimile: (207) 874-4930
                                        Email: lsaul@lewissaul.com;
                                        jhinck@lewissaul.com;
                                        kfitzgerald@lewissaul.com

                                        James A. Francis
                                        John Soumilas
                                        David A. Searles
                                        FRANCIS & MAILMAN, P.C.
                                        Land Title Building, 19th Floor
                                        100 South Broad Street
                                        Philadelphia, PA  19110
                                        Phone: (215) 735-8600
                                        Facsimile:
                                        Email: jfrancis@consumerlawfirm.com;
                                        jsoumilas@consumerlawfirm.com;
                                        dsearles@consumerlawfirm.com

                                        *Attorneys for Plaintiff and the Classes*

## CERTIFICATE OF SERVICE

I, Jon Hinck, Esq., hereby certify that on May 10, 2013 I filed the foregoing Plaintiff Melissa Allen's Complaint In Intervention – Class Action with the Clerk of Court using the Court's CM/ECF system which will send a copy to registered users of the system and that I caused to be served a copy by electronic mail to counsel of record including:

>  Clifford H. Ruprecht
>  Kate R. Isley
>  Pierce Atwood, LLP
>  Merrill's Wharf
>  254 Commercial Street
>  Portland, ME 04101
>  Phone: (207) 791-1100
>
>  Donald R. Frederico
>  Pierce Atwood, LLP
>  100 Summer Street
>  Suite 2250
>  Boston, MA 02110
>  (617) 488-8141

May 10, 2013

>  */s/ Jon Hinck*
>  Jon Hinck (Maine Bar No. 8300)
>  Lewis Saul & Associates, P.C.
>  183 Middle Street, Suite 200
>  Portland, ME 04101
>  Phone: (207) 874-7407
>  Facsimile: (207) 874-4930
>  Email: jhinck@lewissaul.com
>
>  **ATTORNEYS FOR PLAINTIFF**