UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

---------------------------------------------------------X
**TRS RECOVERY SERVICES, INC., and**        MDL 2426
**TELECHECK SERVICES, INC., Fair**          Master File Civ. No. 2:13-md-2426-DBH
**Debt Collections Practices Act (FDCPA)**
**Litigation**
---------------------------------------------------------X

*This Document Relates To:*

JEAN LaROCQUE, ex rel. DEIDRE J. SPANG
v. TRS RECOVERY SERVICES, INC. and
TELECHECK SERVICES, INC.
Civ. No. 11-00091-DBH

MELISSA ALLEN v. TRS RECOVERY
SERVICES, INC. and TELECHECK
SERVICES, INC.
Civ. No. 2:11-cv-00091-DBH

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO CLASS

Pursuant to Fed.R.Civ.P.23(e), and for reasons set forth below, Plaintiffs Jean LaRocque and Melissa Allen move the Court for an Order: (1) approving the terms of an Agreement of Compromise and Settlement ("Settlement Agreement")[1] with Defendants TRS Recovery Services, Inc. and TeleCheck Services, Inc. (collectively "Defendants") as within the range of fair, adequate and reasonable; (2) provisionally certifying two settlement classes and one settlement subclass (the

---

[1] The Settlement Agreement is attached hereto as Appendix I. With the Settlement Agreement, Plaintiffs also submit the following: a proposed Final Approval Order (Exhibit A); proposed Long Form Notice (Exhibit B); proposed Mail Notice (Exhibit C); proposed Publication Notice (Exhibit D); proposed Claim Form (Exhibit E); proposed Preliminary Approval Order (Exhibit F); two revised RECR3 letters incorporating changes referenced in the Settlement Agreement (Exhibits G-1 and G-2); and, a proposed Claim Form for use by Maine residents who receive publication notice (Exhibit H).

"Settlement Classes") for settlement purposes only; (3) approving the notice program and finding that the form and content of the notices of settlement satisfies due process; (4) approving the procedures for members of Settlement Classes to exclude themselves or to object to the settlement; (5) designating counsel for the Settlement Classes ("Class Counsel'); (6) preliminarily enjoining all members of the Settlement Classes, unless and until they have timely and properly excluded themselves from the Settlement Classes, from participating as plaintiffs or class members in any other lawsuits based on, relating to, or arising out of any of the claims asserted in this case; and (7) scheduling a hearing date for final approval of the Settlement Agreement. The parties anticipate, if approved, the proposed notice will be mailed to approximately 300,000 class members nationwide.

Defendants do not oppose the requested relief but expressly reserve all rights and defenses to the claims in this litigation.

As grounds for this motion, the Plaintiffs state:

## I.     DEFINITION OF CERTIFIED CLASSES

By Order of June 4, 2013 (Dkt. No. 17), the Court followed up on its decision of July 17, 2012, and certified the following three classes:

> Class 1: "All natural persons with an address in the State of Maine to whom the defendant TRS sent its RECR3 letter between March 11, 2010 and the present."

> Class 2: "All natural persons with an address in the United States and its Territories to whom the defendant TRS sent its RECR3 letter between March 11, 2010, and the present, and from whom one or both defendants collected in whole or in part, within 30 days of the RECR3 letter, the debt or returned check fee referenced in that RECR3 letter."

> Class 3: "All natural persons who have paid a returned check fee of $25 to at least one of the defendants by way of a TRS demand draft in connection with an underlying check transaction that occurred in the State of Maine since March 11, 2005."

Dkt. No. 17.

## II. CASE SUMMARY

### A. The Claims

This is a consumer class action brought under the federal Fair Debt Collection Practices Act (FDCPA), the Maine Fair Debt Collection Practices Act (MFDCPA), and the Maine Unfair Trade Practices Act (MUTPA) against Defendants TRS Recovery Services, Inc. (TRS) and TeleCheck Services, Inc. (TeleCheck).

The Complaint alleges that Defendants violated these laws through a practice of sending a misleading form collection letter, the "RECR3 letter," and by improperly collecting on erroneous or disputed debts for purportedly returned checks. Plaintiffs allege that by collecting the amount of such a "debt" by demand draft simultaneously with the mailing of an initial collection letter, and further collection of an additional "returned check fee" shortly thereafter, Defendants' uniform collection activity overshadows and/or constitutes action inconsistent with a consumer's right to dispute the debt. Plaintiffs further allege that Defendants' collection practices violate Maine consumer protection laws.

Defendants deny that their collection practices are unlawful.

### B. Procedural History

On March 11, 2011, Plaintiff LaRocque filed this action, captioned *LaRocque ex rel. Spang v. TRS Recovery Services, Inc., et al.*, Civ. No. 2:11-00091-DBH, in the United States District Court for the District of Maine. Defendants filed an Answer on May 2, 2011. Civ. No. 2:11-00091-DBH at Dkt. No. 13.

Plaintiff LaRocque filed a Motion to Certify Class on December 15, 2011 seeking certification of four classes of consumers. Civ. No. 2:11-00091-DBH at Dkt. No. 43. On July 17,

3

2012, the Court granted the motion in part (*see* 285 F.R.D. 139 (D. Maine 2012)) and, on June 4, 2013, entered its Order Certifying A Class Action, certifying the three proposed classes as summarized above.  *See* Dkt. No. 17.

Following the July 17, 2012 class certification decision, plaintiffs represented by the same counsel filed similar legal actions in four other federal jurisdictions.  On February 8, 2013, the related actions were consolidated by the Judicial Panel on Multidistrict Litigation into *In re TRS Recovery Services, Inc, and TeleCheck Services, Inc., Fair Debt Collection Practices Act (FDCPA) Litigation*, MDL No. 2426, , No. 2:13-md-2426-DBH, before this Honorable Court. The tag-along cases no longer figure in this proceeding.[2]

On May 10, 2013, Plaintiff Allen filed a Complaint in Intervention against Defendants, and was certified as an additional representative of the nationwide class on March 20, 2014.  Dkt. Nos. 12, 55.  Plaintiff LaRocque and Defendants each filed a motion for partial summary judgment on April 14, 2014.  Dkt. Nos. 58, 61.

    **C.**    **Written Discovery and Depositions**

The parties conducted substantial discovery beginning before and after the case was transferred to the MDL.  Discovery included the exchange of multiple sets of interrogatories and responses, and the production of thousands of pages of documents.  Plaintiffs' counsel conducted eight depositions of Defendants' representatives on a variety of pertinent topics. Defendants took the depositions of both Plaintiff Jean LaRocque and her daughter Deidre Spang, as well as Plaintiff

---

[2]    The four tag-along cases are: 1) *Bucko v. TRS Recovery Servs, Inc., et al.*, No. 2:13-cv-00046-DBH; 2) *Cook v. TRS Recovery Servs., Inc., et al.*, No. 2:13-cv-00043-DBH; 3) *Greer v. TRS Recovery Servs, et al.*, No. 2:13-cv-00050-DBH; and, 4) *Stout v. TRS Recovery Servs., Inc., et al.*, No. 2:13-cv-00049-DBH.  These cases, never certified as class actions, were resolved through separate individual settlements and are not affected by the proposed class action settlement in the case at bar.

Melissa Allen.  Additionally, Plaintiffs proffered an expert witness and expert witness discovery was conducted, including Defendants' taking the deposition of Plaintiffs' expert.

        D.       **<u>Settlement Negotiations and Mediation</u>**

On September 16, 2013, the parties conducted an arms-length, complicated, lengthy and sometimes contentious in-person mediation session with the assistance of the Honorable Judge Margaret R. Hinkle (Ret.).  Although the parties were not able to reach an agreement during this session, they agreed to appear for a second day of mediation on November 20, 2013, and jointly moved for a temporary stay of proceedings pending this mediation.  Dkt. No. 37.  The Court granted the parties' motion on October 21, 2013.  Dkt. No. 38.  The parties again failed to reach agreement during the second mediation session, but decided to continue good-faith settlement discussions. The negotiations were subsequently conducted via numerous telephone conferences.  In short, the substantive terms of the Settlement Agreement were vigorously negotiated through tenacious advocacy on behalf of all parties.

Finally, in June 2014, the parties arrived at the general terms of a proposed settlement that they believed met the standards for preliminary approval and both sides believe is fair and reasonable. It took significant additional time for the parties to negotiate and reduce to writing the detailed terms of the settlement, the proposed notices to the Settlement Classes and preliminary and final proposed orders.  In fact, the negotiations were so vigorous and time consuming that the parties required extensions of the deadline for moving for preliminary approval on eight separate occasions before finally coming to a fully documented settlement agreement, including all collateral exhibits.  *See* Dkt Nos. 72, 75, 78, 81, 84, 87, 90 and 94.

Counsel for all parties find merit in presenting this settlement and thereby avoiding the ongoing expense and uncertainties of further litigation leading to trial and possible appeals.

### III.  NATURE OF THE SETTLEMENT

Representative Plaintiffs LaRocque and Allen and Defendants TRS and TeleCheck have agreed, subject to this Court's approval, to a settlement of the LaRocque and Allen claims on a class-wide basis. The terms of the settlement are set forth in the Settlement Agreement and are summarized as follows.

#### A.  The Settlement Classes

The classes of consumers covered by the settlement are defined as:

Settlement Class 1:

All natural persons with an address in the United States, American Samoa, Guam, Northern Mariana Islands, Puerto Rico, or U.S. Virgin Islands to whom the defendant TRS sent its RECR3 letter between March 11, 2010 and the date of preliminary approval of this Settlement.[3]

Settlement Class 1 Subclass:

All natural persons with an address in the United States, American Samoa, Guam, Northern Mariana Islands, Puerto Rico, or U.S. Virgin Islands to whom the defendant TRS sent its RECR3 letter between March 11, 2010 and the date of preliminary approval of this Settlement, and from whom one or both Defendants collected in whole or in part, within 30 days of the RECR3 letter, the debt or returned check fee referenced in that RECR3 letter.

Settlement Class 2:

All natural persons who have paid a returned check fee of $25 to at least one of the Defendants by way of a TRS demand draft in connection with an underlying check transaction that occurred in the State of Maine between March 11, 2005 and the date of preliminary approval of this Settlement.[4]

App. I, section 3.

---

[3]  This Settlement Class includes certified classes 1 and 2, merged and expanded by agreement to include natural persons to whom TRS sent a RECR3 letter in any state or territory, regardless of whether any Defendant collected any amount of money from or on behalf of the recipient Class member.

[4]  This class represents certified class 3.

### B. Class Recovery

Under the Settlement Agreement, Defendants will pay a total amount of $3,430,000.000 for the benefit of the Settlement Classes in full and final settlement of the lawsuit (the "Settlement Fund"). All payments required under the Settlement Agreement will be taken out of the Settlement Fund. After deduction for expenses and costs of administering the settlement, including the costs of notice, and any court awarded attorney fees, costs and individual awards to the class representatives, the net proceeds will be distributed to Settlement Class members. From the Settlement Fund, approximately one million, two hundred twenty thousand dollars ($1,220,000.00) shall be earmarked for distribution to the Settlement Class 1 Subclass and to Settlement Class 2 on a *pro rata* basis. App. I, sections 4.9–4.12. From the Settlement Fund, approximately eight hundred, twenty-five thousand dollars ($825,000.00) shall be earmarked for distribution to the members of Settlement Class 1 on a *pro rata* basis. *Id*.

To the extent that funds remain in the Settlement Fund after payments to Settlement Class members, such funds will be paid, subject to Court approval, as a *cy pres* donation, 85% of which shall be distributed to the National Endowment for Financial Education, and 15% of which shall be distributed to Pine Tree Legal Assistance, Inc., 88 Federal Street, Portland, Maine 04101. App. I, section 4.15.

### C. Business Practice Changes

As set forth in the Agreement, TRS intends to make revisions to its RECR3 letter in response to the allegations set forth in Plaintiff's Complaint. App. I, Exhibits G-1 and G-2. Such changes have been reviewed by Class Counsel. If adopted and implemented by Defendants, the parties and Class Counsel agree that such changes would remedy the Named Plaintiffs' allegations

that the RECR3 letter violated the FDCPA.  Nothing in the Settlement Agreement limits TRS's ability to make future changes to the RECR3 letter.

##### D. Class Notice

Settlement Class members will receive notice of the settlement through mailing of the Mail Notice attached to the Agreement as Exhibit C. Settlement Class members receiving Mail Notice will also receive a Claim Form, attached to the Agreement as Exhibit E, which will be the only form required for them to return. The Claim Form will only require a verification affirming identity and membership in the Class, and without the requirement of submitting any other information or documentation, in order to receive benefits from the Settlement Fund.

Additionally, for Settlement Class members who are residents of the State of Maine for whom Defendants do not have current addresses, there will be notice provided through publication in each of the following newspapers: Bangor Daily News, Lewiston Sun Journal, and Portland Press Herald.  App. I, section 6.4.  Members receiving notice through publication will be eligible to file a Claim Form that requires them to attest that they are members of the Settlement Class. App. I, Exhibit H.

The exact date by which Settlement Class members must return Claim Forms, as set by this Court in the Preliminary Approval Order, will be identified clearly as a deadline in the Mail Notice, the Publication Notice and on the Claim Form.  A Settlement Administrator (currently Garden City Group, LLC but subject to substitution, if needed, per the terms of the Agreement) will be hired to coordinate the notice process in order to achieve efficiency and to minimize costs.

##### E. Notice Costs

All costs associated with notice and administration of the settlement will be paid from the Settlement Fund.  This includes all necessary and reasonable costs of administering the

disbursement of consideration, and other administrative expenses including, but not limited to, postage charges, printing costs, a telephone assistance program, and all other notice costs and other charges as may be approved by the parties subject to approval by the Court. App. I, section 4.1.

### F. Service Awards for Class Representatives

Subject to court approval, the parties have agreed that the representative Plaintiff LaRocque should be paid by the Defendants an award of $6,000, and the more recent appearing representative Plaintiff Allen an award of $4,000 for their individual settlement and their services in representing the Settlement Classes. App. I, section 4.6. The awards reflect Plaintiffs' long involvement in this litigation, numerous contacts with counsel, and participation in discovery including production of records and sitting for depositions taken by Defendants. The settlement is not conditioned on the Court's approval of these awards. *Id*. at section 4.7.

### G. Attorney Fees and Costs

Class Counsel will submit a request for approval of attorney fees and costs in an amount not to exceed $1,050,000.00, or approximately 31% of the total Settlement Fund. App. I, section 4.3. The amount of attorney fees and expenses to be paid to Class Counsel was not agreed to by the parties until agreement was reached in principle on the other terms of this Settlement Agreement. Class Counsel will file declarations in support of the fee request ten (10) days prior to the Final Fairness Hearing. *Id.*

### IV. THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND ADEQUATE

The Settlement Agreement presented to the Court for preliminary approval represents a fair and reasonable resolution of this dispute, and merits notice to and consideration by the class members. The settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the economic, as well as non-economic, value of the settlement to the classes. It will

provide financial relief to class members, provides for practice changes by beneficial to the class and consumers generally, and alleviates the burden and risk of further litigation.

In order to begin the approval process, the Plaintiffs request, with the assent of Defendants, that the Court enter the proposed Order preliminarily approving the Settlement Agreement, providing for notice to the class and scheduling the Final Approval Hearing.

### A.      The Standard For Preliminary Approval of Settlement Agreements

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement. The MANUAL FOR COMPLEX LITIG. (Fourth) § 21.632 (2004), sets forth the procedures for preliminary approval of settlements:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

At the preliminary approval stage, the question for this Court is whether the settlement falls well within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). *Id.*; *see also Durrett v. Housing Auth. of City of Providence,* 896 F.2d 600, 604 (1st Cir. 1990). Consideration of the relevant factors indicates that the proposed Settlement Agreement in this case is in the range of possible approval and supports authorizing dissemination of notice of the settlement to class members.

Initial indicia of the fairness of a class settlement include: (1) that the settlement has been arrived at by arm's-length bargaining; (2) that sufficient discovery has been taken or investigation

completed to enable counsel and the court to act intelligently; and (3) that the proponents of the settlement are counsel experienced in similar litigation. NEWBERG, at §11.41.

For class action settlement approval, "the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *National Ass'n of Chain Drug Stores v. New England Carpenters*, 582 F.3d 30, 44 (1st Cir. 2009). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted).

**B.     Reasons For Approval**

**1.     The Funds Committed to the Settlement Provide Significant Benefits to the Settlement Classes**

The economic relief provided for under the settlement demonstrates that the proposed Settlement Agreement is fair, reasonable, and appropriate. Defendants will pay $3,430,000.00 in total relief available to consumers nationwide who were subject to Defendants' collection practices.

From the Settlement Fund, approximately one million, two hundred twenty thousand dollars ($1,220,000.00) shall be earmarked for distribution to the Settlement Class 1 Subclass and to Settlement Class 2 on a *pro rata* basis based upon the claims process described in sections 4.9–4.12 of the Settlement Agreement.  Further, approximately eight hundred, twenty-five thousand dollars ($825,000.00) shall be earmarked for distribution to the members of Settlement Class 1 on a *pro rata* basis based upon the claims process.  These projected amounts payable to class members are net of payments from the Settlement Fund for payment of the expenses of notice and

11

administration, Taxes and Tax Expenses, attorney's fees awarded by the Court, and awards to the Plaintiffs approved by the Court. Because the settlement calls for a *pro rata* distribution, the exact amount that each claiming Settlement Class member will receive will depend, of course, on how many timely and valid Claim Forms are submitted by the deadline.

These payments are a significant benefit to class members because individual consumers are unlikely to spend the time and money necessary to recover small amounts of funds. The statutory damages and modest actual damages at issue in this case are the types of damages that class actions are most suited to remedy. NEWBERG, §11.6; *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Additionally, a significant number of class members are likely to be unaware that their rights have been violated. What this Court observed in ruling on a settlement motion in *Scovil v. Fedex,* 2014 WL 1057079, *5 (D. Me. 2014), applies here: "These concrete dollar numbers to be received now are a fair trade-off for the uncertainties of trial and appeal and a prolonged delay in receiving any money."

### 2. Voluntary Settlement of this Class Action Serves the Interest of the Parties, the Court, and the Public Interest

There is an overriding public interest in settling class action litigation. *Lazar v. Pierce,* 757 F. 2d 435, 439 (1st Cir. 1985). "By their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class action suits lend themselves readily to compromise." NEWBERG, §11.41, *citing, HEW Corp. v. Tandy Corp.,* 1979 WL 1580 (D. Mass 1979) (settlement appropriate when it was uncertain that plaintiffs would prevail on the merits, the parties recognized that they would be faced with a lengthy and expensive trial, and the question of damages was indefinite).

Similarly, the settlement of this particular case is appropriate. Although Ms. LaRocque and Ms. Allen believe they have valid claims under the FDCPA, MFDCPA, and MUTPA, they understand that success on the merits is by no means assured. Approval of this Settlement Agreement would resolve the conflicts underlying this class action without the necessity, time and expense of protracted dispositive motion practice and ultimately, perhaps a trial. The value of the benefits class members will receive under the Settlement Agreement is enhanced by the fact that the benefits will be provided now, without the delay, burden and risks of further litigation.

### 3. The Settlement Resulted From Arms-Length Negotiations and is not the Product of Collusion

The requirement that a settlement be fair is designed to protect against collusion among the parties. Courts have invoked an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. NEWBERG, §11.42. Eschewing such a presumption, this Court has used a set of factors to assess the fairness, reasonableness and adequacy of a settlement. *See Scovil v. Fedex,* 2014 WL 1057079, *2, n.1 (D. Me. 2014); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485, *2, n. 16 (D. Me. April 134, 2011) (citing additional sources). These factors are: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. *Id.*

Examined against these factors, the proposed settlement plainly passes muster for preliminary approval. The approximate four year duration of the litigation, the excellent result for the class in spite of the significant procedural and substantive hurdles the Representative Plaintiffs faced, the hard-fought, arms-length course of negotiations by experienced class action lawyers and

the avid advocates for Defendants' interests, are all testaments to the non-collusive nature of the settlement.

### 4. The Proposed Notice to Class Members is Adequate

Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950*).* The Notice the parties propose here (App. I, Exhibit C) is clear and straightforward, providing Settlement Class members with enough information to evaluate whether to participate in the settlement, as well as directions on how to seek further information. Notice will be given by mail. The Settlement Administrator will update each address on the Settlement Class list by means of the National Change of Address ("NCOA") database before Notice is mailed to Settlement Class members. The Notices will be mailed to the last known address of all Settlement Class members, and any Notices returned with a forwarding address will be promptly re-mailed to the forwarding address.

In addition, a website will be established with additional notice (App. I, Exhibit B), as well as with additional information concerning the litigation, and publication notice (App. I, Exhibit D) will be available to residents of the State of Maine for whom Defendants do not have current addresses.

The proposed program of notice is appropriate, contains all required Rule 23 information and properly advises Settlement Class members of their rights. The proposed method for notifying

the Settlement Class thus satisfies both Rule 23 and due process and constitutes the best notice practicable under the circumstances.

### 5. The Requested Cost, Fees and Plaintiffs' Awards Are Reasonable

The Court must be satisfied that all awards are reasonable. As this Court has observed, the First Circuit does not require a lodestar analysis, but allows a percentage-of-funds approach to attorney fees, *Scovil*, 2014 WL 1057079, *5 (D. Me. 2014) *citing, In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir.1995).[5]

This case presented novel questions calling on skill and perseverance from experienced plaintiffs' counsel. The substantial settlement amount was achieved with a great deal of time and effort expended in vigorously contested litigation. A 31% fee is within the range of fees awarded by district courts within this Circuit. "The normal percentage awarded by federal courts in 20-30% of the value of settlements, with 25% being a "benchmark." [D]istrict courts cases … show that, in this circuit, percentage fee awards range from 20% to 35% of the fund." *Mazola v. May Dep't Stores Co.*, No. 97 CV 10872-NG, 1999 WL 1261312 at *4 (D. Mass. Jan. 27, 1999). In *Scovil*, this Court found a one-third contingent fee satisfied the market-mimicking approach. 2014 WL 1057079 at *5.[6] Though each case presents different risk versus recovery equations, the effort and

---

[5] The First Circuit has applied factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) "for use in sculpting fee awards." *See*, *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 n.3 (1st Cir. 1997) *citing* applying the *Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases.

[6] Though notice costs expenses were handled by plaintiffs' counsel in *Scovil,* the individual class member recovery was a smaller proportion of actual damages.

15

expenditures made by Class Counsel and the benefit to the Class in light of the risks and limited upside from further litigation, all justify the proposed fee award.

Awards to the two Settlement Class representatives are also warranted based on their service to the Settlement Classes.[7]

## V. THE SETTLEMENT CLASSES ARE APPROPRIATELY CERTIFIED

This Court has already affirmed that the claims presented in this litigation are suitable for class treatment. *LaRocque v. TRS Recovery Servs., Inc. et al.*, 285 F.R.D. 143, 146-59 (D. Me. 2012. Indeed, Settlement Class 2 is exactly the same as certified class 3 in this matter, and therefore Rule 23 is fully satisfied with respect to Settlement Class 2. Order Certifying A Class Action, Dkt. No. 17. Likewise, the Settlement Class 1 Subclass is exactly the same as certified class 2 in this matter, and thus satisfies Rule 23. *Id.* The Maine consumers who make up certified class 1 in this matter are all members of Settlement Class 1. *Id.*

The only Settlement Class members not already members of the certified classes are natural persons with addresses in states and territories *other than Maine* to whom Defendant TRS sent its RECR3 letter between March 11, 2010 and the present, from whom one or both Defendants *did not* collect money within thirty days of the letter. These consumers are part of Settlement Class 1. App. I, section 3.1. Settlement Class 1, including the non-Maine consumers, meets the requirements of Rule 23 for all the same reasons as certified class 1.

---

[7] *See Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, 2014 WL 4403524, *16 (E.D. Va. Sept. 5, 2014) (awarding $5,000 to each of several class representatives in FCRA settlement); *Sapp v. Experian Information Solutions*, 2013 WL 2130956, *3 (E.D. Pa. May 15, 2013) (awarding $15,000 to class representative in FCRA settlement); *McGee v. Continental Tire North America, Inc.,* 2009 WL 539893, *18 (D.N.J. March 4, 2009) ($3,500); *Barel v. Bank of America,* 255 F.R.D. 393, 402-403 (E.D. Pa. 2009) ($10,000); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (awarding $5,000, and citing cases); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (awarding $25,000 to $85,000 incentive awards).

A. **Fed. R. Civ. P. 23(a)**

"The [Federal Rules of Civil Procedure] establish four elements that must be present in order to obtain class certification. This taxonomy comprises numerosity of claims, commonality of legal or factual questions, typicality of representative claims or defenses, and adequacy of representation." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) *citing* Fed.R.Civ.P. 23(a). The non-Maine consumers who are not members of the certified classes in this matter satisfy these requirements.

Defendants' records indicate that there are approximately 100,000 non-Maine consumers to whom Defendant TRS sent the RECR3 letter but from whom no funds were collected within thirty days of the letter. When added to the approximately 200,000 consumers in the already-certified classes, Settlement Class 1 consists of approximately 300,000 consumers, and clearly satisfies the numerosity requirement.

The questions of law and fact are substantially identical among class members, namely, whether Defendants' RECR3 letter is misleading in violation of the FDCPA. Just as in the cases of Ms. LaRocque and Ms. Allen, Defendant TRS used its standard, uniform collection practices to send the standardized, form RECR3 letter to all members of Settlement Class 1. *See LaRocque,* 285 F.R.D. at 144-45. Thus, Settlement Class 1 satisfies the commonality requirement for the same reasons as certified class 1.

The claims of Plaintiffs LaRocque and Allen are identical to those of all other members of Settlement Class 1, and this Court has already determined that their claims are typical of those of certified class 1 because their claims are based on the same form dunning letter sent to all class members, and the same statutory theory of relief under the FDCPA. *LaRocque*, 285 F.R.D. at 148. Furthermore, this Court has determined that Plaintiffs and their counsel are adequate

17

representatives of consumers with these claims. *LaRocque*, 285 F.R.D. at 148-52.

### B. Fed. R. Civ. P. 23(b)(3)

Settlement Class 1 further meets the predominance and superior requirements in Rule 23(b) because the issues of law and fact are identical among the class members, including non-Maine class members. *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together"). Just like the claims of members of certified class 1, the claims of non-Maine consumers nationwide to whom defendant TRS sent the RECR3 letter rise or fall upon the legality of the letter and Defendants' uniform and automated collection practices. *LaRocque*, 285 F.R.D. at 153. Class-wide resolution of non-Maine consumers' claims is appropriate for all the same reasons it is appropriate for consumers in Maine: consumers have minimal interest in controlling prosecution of their individual cases; it is desirable to concentrate the litigation in a single forum; and no insurmountable difficulties in case management exist. *See id.*

### VI. CONCLUSION

The proposed class action settlement is fair, reasonable, and adequate. The in-depth discovery that has been accomplished; the complexity of this case and length of time that would be needed if it goes forward; the nature of the hard fought litigation and arm's-length negotiations; and the adequacy of the proposed Notice all support preliminary approval of the settlement.

For the foregoing reasons, Representative Plaintiffs LaRocque and Allen respectfully request that this Court grant this Motion, enter the proposed Order of Preliminary Approval and (1) preliminarily approve the proposed class settlement; (2) schedule a fairness hearing date for final approval of the settlement; (3) approve the form and manner of notice proposed to be mailed to and published for the Settlement Class; and (4) find that such notice satisfies due process.

Date: April 16, 2015 　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　*/s/ James A. Francis*
　　　　　　　　　　　　　　　　　　　JAMES A. FRANCIS
　　　　　　　　　　　　　　　　　　　JOHN SOUMILAS
　　　　　　　　　　　　　　　　　　　**FRANCIS & MAILMAN, P.C.**
　　　　　　　　　　　　　　　　　　　Land Title Building, 19th Floor
　　　　　　　　　　　　　　　　　　　100 South Broad Street
　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19110
　　　　　　　　　　　　　　　　　　　jfrancis@consumerlawfirm.com
　　　　　　　　　　　　　　　　　　　jsoumilas@consumerlawfirm.com

　　　　　　　　　　　　　　　　　　　**LEWIS SAUL & ASSOCIATES, P.C.**
　　　　　　　　　　　　　　　　　　　LEWIS J. SAUL
　　　　　　　　　　　　　　　　　　　JON HINCK
　　　　　　　　　　　　　　　　　　　KEVIN M. FITZGERALD
　　　　　　　　　　　　　　　　　　　183 Middle Street, Suite 200
　　　　　　　　　　　　　　　　　　　Portland, ME 04101
　　　　　　　　　　　　　　　　　　　(207) 874-7407
　　　　　　　　　　　　　　　　　　　lsaul@lewissaul.com
　　　　　　　　　　　　　　　　　　　jhinck@lewissaul.com
　　　　　　　　　　　　　　　　　　　kfitzgerald@lewissaul.com

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs and the Classes*