## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| IN RE: TRS RECOVERY SERVICES, INC. AND TELECHECK SERVICES, INC., FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) LITIGATION | ]<br>]<br>]<br>] | CIVIL DOCKET NO. 2:13-MD-2426-DBH |

## PROCECURAL ORDER

On June 9, 2015, I heard argument from the parties about issuing notice in preparation for a fairness hearing on their proposed settlement agreement, revision of the previously certified classes, and plan of distribution. In advance of and during this argument, the parties' counsel provided helpful clarification. I think it is useful to recapitulate what needs to be addressed first in connection with issuing notice and then in preparation for and/or at the fairness hearing.

Once I receive class notice forms from the parties that are improved to my satisfaction, I am prepared to approve them and set the case for a final fairness hearing. See Manual for Complex Litigation (Fourth) § 21.634 (2004). Counsel should consult with the case manager to determine the date of that hearing. I will then issue an Order (which will vary from the Proposed Order, as described during the June 9, 2015 hearing) directing notice to class members on the certification, proposed settlement, and date of the final fairness hearing.

1. **Class Notices.** Counsel agreed during the June 9, 2015 hearing to revise the class notification forms to make them simpler, clearer, and

more consistent with the Federal Judicial Center templates.[1]   The plaintiffs' counsel agreed to provide the revised forms to the defendants' counsel by Tuesday, June 16.  The defendants' counsel agreed to make revisions by Tuesday, June 23.  The parties were directed to file their revised notice forms with the Court by Monday, June 29, 2015.[2]

2. **Settlement Amount Distribution.**   I would like written clarification regarding the plan of distribution in light of some of the contradictions between the settlement agreement and the parties' responses to the May 6, 2015 Procedural Order, and so that class members including any potential objectors will understand how distribution will work. Please confirm whether it is the case that:

   a. Members of Class 1 (I will hereafter use the terminology and numbering of classes that the Settlement Agreement uses, not the terminology and numbering of my previous class certification order), who are *not* members of Subclass 1, are those who received the ReCR3 letter but did not pay a fee.  They will receive payment from only the 40% allocation.

   b. Members of Subclass 1 are those who both received a ReCR3 letter and paid a fee. They will receive a payment from both the 40% allocation (because they received the letter) and the 60% allocation (because they paid a fee).

---

[1] Available at:
http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/pages/524
[2] The parties proposed filing "redlined" versions of the notices.  That is fine, so long as the parties also file "final" versions that do not include the redlining.

2

c. Members of Class 2, who are *not* members of Subclass 1 are Maine residents who paid a fee but did not receive a ReCR3 letter. They will receive payment from only the 60% allocation.

d. Members of Class 2, who are also members of Subclass 1 are Maine residents who both received the ReCR3 letter and paid a fee. They will receive payment from both the 40% allocation and the 60% allocation.

e. Roughly two-thirds of Class 1 members are in Subclass 1.

f. Receipt of multiple letters by one class member, or multiple instances of fee payment, do not result in greater recovery for that individual class member.

3. **Modifications to the Settlement Agreement.** There are particular provisions of the settlement agreement that I will not approve. The parties represented that they will draft a document called a "Modification to the Agreement," which will be included with the notices when they are distributed to class members.

a. I do not approve the date set in the Settlement Agreement for payment of attorney fees. <u>See</u> Appendix I, § 4.5. I will not approve an agreement that requires disbursement of fees before class members receive payment (<u>compare</u> Appendix I, § 4.14) for three reasons. First, I want final information about the size of the award each class member will receive. Second, I am concerned about the appearance of fairness of the timing of the payments to the class members vis-à-vis the lawyers. Third, I

may reduce attorneys' fees by any excess in costs of administration of the settlement (which otherwise has no cap and could therefore diminish the distribution to the class).

b. At the hearing, the parties agreed to remove sections 4.16 and 11.2 from the Settlement Agreement.

c. The parties also agreed that neither party will terminate the agreement merely on the basis that I do not approve either or both of the *cy pres* recipients. I reserve ruling until the fairness hearing on whether I will approve the *cy pres* recipients.

d. The parties acknowledged that the Court, and not the Settlement Agreement, controls whether and how objectors will be heard at the fairness hearing.

**4. Issues to Address at the Final Fairness Hearing.** There are particular issues about which I need additional information—either in writing before the final fairness hearing or orally at the hearing.

a. Any side agreements, Fed. R. Civ. P. 23(e)(3), including any settled non-class actions, and how they compare to the class recovery.

b. If the settlement value was reached, in part, based on the defendants' net worth, then I need to be informed of that number. (The oral argument suggested that the net worth of the defendants was irrelevant to the settlement because the Fair Debt Collection Practices Act provides that the class may only recover the lesser of either the absolute statutory cap of $500,000

or 1% of the defendants' net worth, and the agreement's settlement amount was derived from the $500,000 statutory cap. 15 U.S.C.A. § 1692k.)

c. When did/will the defendants begin using the revised ReCR3 letter?  (It had not yet occurred as of the June 9 hearing.)  In that regard, I need to know whether the actual size of any Settlement Class or Subclass is or will be greater than the estimated class size by more than 7.5%.  See Appendix I, § 7.5.2.

d. If the final fairness hearing occurs before the claims submission deadline, I need predicted response rates (and the bases for the predictions) for each of the settlement classes/subclasses.  If it occurs after the submission deadline, then I need actual data.

e. I did not address at the June 9 hearing fraud-avoidance techniques in connection with claims provoked by publication notice for Class 2, *i.e.*, those class members for whom the defendants do not have addresses.  The plaintiffs had responded to my earlier Procedural Order by referring to the requirement of a certification under penalty of perjury that the claimant paid a qualifying fee.  Do the defendants have records that could be matched against any such claims?

f. The plaintiffs' counsel will provide a more robust description of what the named plaintiffs did to justify the proposed incentive awards, with additional information such as the length of deposition(s) attended, travel, and amount of time spent

5

responding to interrogatories and communicating with counsel is needed.

g.  I anticipate receiving more information about administrative costs that were not included in the estimates—for example, the costs of maintaining the websites and phone lines—and the other bids the parties received in selecting a claims administrator.

h.  It would be helpful to have anything the mediator is ethically able to disclose about the arm's length nature of the settlement negotiations.

i.  I understand that Allen is a member of only Class 1 and therefore will receive payment from the 40% allocation only.  LaRocque is a member of Class 1, Subclass 1 and Class 2.  She will therefore receive payment from both the 40% allocation and the 60% allocation.  There appears to be a third category—members of Class 2 who paid a fee but did not receive the ReCR3 letter—who will receive payment from the 60% allocation only.  I did not focus on this aspect at the June 9 hearing.  The parties should address whether there are any issues of loyalty to this class component.

j.  In light of the discussion at the June 9 hearing about fee-shifting,[3] the <u>Johnson v. Georgia Highway Express, Inc.</u>, 488

---

[3] Had this case proceeded to judgment in the plaintiffs' favor, the "lodestar" calculation would be the measure of any fee award against the defendants TRS and TeleCheck, as this is the preferred method in fee-shifting cases, and a "court shuns this tried-and-true approach at its peril." <u>Nilsen v. York Cnty.</u>, 400 F. Supp. 2d 266, 270 n.12 (D. Me. 2005); <u>Coutin v. Young & Rubicam Puerto Rico, Inc.</u>, 124 F.3d 331, 337 (1st Cir. 1997).  However, common fund principles govern where a fee-shifting case settles in advance of judgment.  Restatement (Third) of Restitution and Unjust

F.2d 714 (5th Cir. 1974), factors,[4] and the lodestar approach, I
note that the First Circuit does not require that I employ a
lodestar analysis in a class action settlement.   In re Thirteen
Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,
56 F.3d 295, 307 (1st Cir. 1995).  Accordingly, I have regularly
used a percentage-of-funds approach to evaluate attorney fees.  I
have also relied on the Seventh Circuit's market-mimicking
approach to determine what is a reasonable fee, see, e.g., Nilsen
v. York County, 400 F. Supp. 2d 266, 278 (D. Me. 2005); Scovil
v. FedEx Ground Package Sys., Inc., No. 1:10-CV-515-DBH,
2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014), I anticipate
following that approach here, and counsel should therefore
provide, as best as they are able, the kinds of information that
are pertinent, including what I have used in previous cases.[5]

---

Enrichment § 29 cmt. c, at 433 (2010).  Circuits that have addressed the issue agree.  See Staton
v. Boeing Co., 327 F.3d 938, 967–68 (9th Cir. 2003); Brytus v. Spang & Co., 203 F.3d 238, 246–
47 (3d Cir. 2000); Florin v. Nationsbank, 34 F.3d 560, 564 (7th Cir. 1994); Cnty. of Suffolk v.
Long Island Lighting Co., 907 F.2d 1295, 1327 (2d Cir. 1990); see also Alan Hirsch & Diane
Sheehey, Fed. Judicial Ctr., Awarding Attorneys' Fees and Managing Fee Litigation 69, 75 (2005)
(stating that "a common fund award is not necessarily precluded in such a case," and "[n]o courts
have held to the contrary").

[4] The Johnson approach has been widely criticized, even by the Supreme Court.  See, e.g., Perdue
v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (The method set out in Johnson, 488 F.2d at
717–19, which listed 12 factors that a court should consider in determining a reasonable fee
"gave very little actual guidance to district courts.  Setting attorney's fees by reference to a series
of sometimes subjective factors placed unlimited discretion in trial judges and produced
disparate results.") (citation and internal quotations omitted).

[5] Of course, I will also look at whatever additional information the plaintiffs' counsel and any
objectors provide on the issue of attorneys' fees.  (The plaintiffs' counsel suggested that they will
provide information both about the market-mimicking analysis and the lodestar, as a kind of
cross-check.)

7

k. In addressing whether the settlement, the plan of distribution, and the administrative costs and legal fees are fair, just, and reasonable, counsel should consult the <u>Manual for Complex Litigation</u> (Fourth) (2004) (<u>e.g.</u>, § 21.62); Federal Judicial Center, <u>Managing Class Action Litigation: A Pocket Guide for Judges</u> (2010) (<u>e.g.</u>, Chapter IV); American Law Institute, <u>Principles of Aggregate Litigation</u> (2010); and my previous class action settlement and attorney fees decisions[6] for the relevant factors to consider.

**SO ORDERED.**

**DATED THIS 11TH DAY OF JUNE, 2015**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[6] <u>See</u> <u>Scovil v. FedEx Ground Package Sys., Inc.</u>, No. 1:10-cv-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014); <u>In re New Motor Vehicles Canadian Exp. Antitrust Litig.</u>, 842 F. Supp. 2d 346 (D. Me. 2012); <u>In re New Motor Vehicles Canadian Exp. Antitrust Litig.</u>, No. MDL 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011) <u>supplemented</u>, 800 F. Supp. 2d 328 (D. Me. 2011) and <u>aff'd</u>, No. 2:03-MD-1532-DBH, 2012 WL 379947 (D. Me. Feb. 3, 2012); <u>Nilsen v. York Cnty.</u>, 382 F. Supp. 2d 206 (D. Me. 2005); <u>Nilsen v. York Cnty.</u>, 400 F. Supp. 2d 266 (D. Me. 2005); <u>In re Compact Disc Minimum Advertised Price Antitrust Litig.</u>, 216 F.R.D. 197 (D. Me. 2003) <u>judgment entered</u>, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003).